## Chicago City Railway Company v. Charles Hagenback.

### Gen. No. 12,962.

1. INSTRUCTION—*when need not refer to dismissed counts.* An instruction is not erroneous which permits the jury to render a verdict for the plaintiff if it is found that his injuries were sustained on account of the negligence of the defendant "as set forth and claimed in his declaration, or some count thereof," even if certain counts of the declaration have been dismissed from the consideration of the jury, where the dismissal of such counts is called to the attention of the jury by other instructions given.

2. INSTRUCTION—*when not error to refuse to instruct the jury as to the order in which they shall determine the questions in issue.* Held, in view of the other instructions given, that it was not error to refuse to give the following instruction, notwithstanding such instruction was in itself correct:

"The jury are instructed that if, under the instructions of the court, they find from the evidence in this case the plaintiff is not entitled to recover, then they will not have occasion to at all consider the question of damages or character or extent of the injury to the plaintiff, whether serious or slight."

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Affirmed. Opinion filed February 19, 1907.

**Statement by the Court.** On May 1, 1902, appellant owned and operated a double track electric street railway in Halsted street in the city of Chicago. Halsted street runs north and south. North-bound cars were run over the east track and south-bound cars over the westerly of the two tracks. Appellant also owned and operated a street car line in Archer avenue in said city, which runs northeast and southwest. The northern terminus of appellant's Halsted street line is O'Neill street, some distance north of Archer avenue, but by reason of the process of elevating railway tracks between Archer avenue and what is commonly known as Halsted street bridge, making it impossible for the time being to operate the street car tracks over that portion of Halsted street, Archer avenue was tempo-

rarily the northern terminus of the Halsted street line.

For a long period of years next prior to May 1, 1902, the date of the accident, appellee had been engaged in the occupation of teamster for industries located in the Stock Yards district and was especially familiar with the locality of Halsted and Thirtieth streets and other streets in that vicinity. He had on that day driven a wagon with two horses attached for Armour & Co., with a load to be delivered in the northern part of the city, and on his return he had a load of fifteen empty barrels. He drove in Halsted street until he reached the south side of the bridge in that street and then, on account of the work of elevating the tracks, drove west one block to Lime street. He proceeded south on that street to about Twenty-seventh street and then turned east again into Halsted street. On reaching Halsted street he turned south and drove in the westerly street car track to Thirtieth street, where he was run into by an electric car operated by appellant, running south in the same direction in which he was driving. It was about eight o'clock in the evening and it was dark and foggy. Some of the witnesses testify that it was raining at the time, and some that it was misting. Appellee was thrown forward upon the pavement by the collision and suffered a fracture of the femur of the left leg.

This action was brought by appellee against appellant to recover damages for the injuries sustained by him. The trial resulted in a verdict of $20,000 in favor of appellee. Upon a motion for a new trial appellee remitted $5,000 from the amount of the verdict, and judgment was entered against appellant for $15,000.

William J. Hynes, John E. Kehoe and Watson J. Ferry, for appellant.

Goodrich, Vincent & Bradley, for appellee; Warren Nichols, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

It is urged on behalf of appellant that the verdict is against the overwhelming weight of the evidence.

The negligence averred in the original declaration is that appellant carelessly and improperly propelled and managed its car which was moving in a southerly direction along Halsted street, by reason whereof it ran into and struck with great force and violence appellee and his wagon, while he was driving with due care in a southerly direction, whereby appellee was thrown with great force and violence upon the ground.

Subsequently seven additional counts were filed. A special demurrer was sustained to the fourth and sixth additional counts. At the conclusion of the evidence, and at the request of appellant, the court gave to the jury peremptory instructions to find the defendant not guilty as to the second and seventh additional counts, writing upon the instructions "given, this count was dismissed." The second, fourth, sixth and seventh additional counts, therefore, are out of the case.

The negligence averred in the first additional count is that the defendant carelessly, negligently and improperly propelled, operated and managed its car at a high and dangerous rate of speed, to wit, fifteen miles an hour, by reason whereof plaintiff was injured. The third additional count alleged negligence in operating the car at a high and dangerous rate of speed, to wit, fifteen miles an hour in the night time, whereby, etc. The fifth additional count averred that appellant's servants propelled, operated and managed the car without knowledge of the presence of plaintiff in front of the car, and that by the exercise of due care and caution they should have known he was there. The negligence avered in the sixth additional count is the failure to ring a bell or otherwise notify the plaintiff of the approach of the car.

The evidence shows without controversy that as appellee was driving the team which he had charge of

south on Halsted street in the westerly track of appellant's street car line, appellant's car going in the same direction approached rapidly from the north and collided with the wagon with such violence as to throw appellee forward off his wagon and down between the horses upon the pavement. The violence of the collision was such as to break in the front part of the car, and the controller was bent over against the front door of the car, breaking in the door. One of the horses which appellee was driving was thrown down and the horses and wagon were pushed along the pavement after the first collision a distance of several feet. Appellee, although thrown forward by the collision, was discovered, after the car was stopped, lying by the step of the front platform of the car.

It is a conceded fact that the accident happened about eight o'clock in the evening, and that it was misting and wet. The collision took place at or near Thirtieth street. There was a street light within fifteen or twenty feet of the team at the time of the collision. The accident was observed by a number of witnesses standing on the southeast corner of Thirtieth and Halsted streets. No one of these witnesses heard any bell or other warning as the car approached; nor did they notice the approach of the car until it was within thirty or forty feet of the wagon. From the testimony of these bystanders it appears that there was little, if any, decrease in the speed of the car from the point where they first noticed it until it struck the wagon.

The plaintiff testified that when he turned into Halsted street after leaving Lime street he looked north and did not see any car, and that he looked over his shoulder now and then, probably once or twice in each block; that he did not hear or see any car approaching and did not know what struck his wagon at the time. He had a light on the front of his wagon and his load of barrels was covered by a white tarpaulin.

For the defense several witnesses testified to the character of the weather on the evening in question.

541 CHICAGO—FIRST DISTRICT—A. D. 1907. 541

The witness Sweeney was riding on the front platform of the car, and says he did not see the wagon until the car was within twenty or thirty feet of it; he did not see any light on the wagon; the motorman pulled on his lever. The witness Hall testified that he was the motorman on the car in question; that he had his window down and was looking straight ahead. He had his controller on the ninth or tenth point; that when he first discovered the wagon ahead of him it was about forty feet or a little more away from him. He applied the brakes and sanded the track, but the car seemed to slide; that he then applied the reverse key, and in his opinion he checked the speed of the car about one-half, so that when it collided with the wagon it was going about three and one-half miles an hour. The witness testified that he rang his gong twice as he approached Thirtieth street. He gave it as his opinion that on a good rail, not slippery, a car going at the rate of seven miles an hour can be stopped in about seventy feet, and with a slippery rail it would require thirty to thirty-five feet more. The witnesses Covert, Jeffry and Halsted, motormen, corroborated Hall in his opinion as to the distance in which a car can be stopped.

Appellant also offered evidence tending to show that in the locality of the accident Halsted street was poorly lighted.

It is the contention of appellant upon the evidence that the plaintiff was guilty of contributory negligence and that appellant was not guilty of negligence. Taking all the circumstances into consideration and the testimony offered bearing upon the question of negligence, we are not of the opinion that the verdict is against the weight of the evidence upon the question of contributory negligence, or upon the question of appellant's negligence.

Errors are assigned upon the admission and exclusion of evidence, and we have considered the points made by appellant's counsel. They relate mainly to the distance the witnesses could see on the evening of

the accident, and as to the speed the car was going just prior to the collision. While some of the rulings were not, perhaps, strictly accurate, we do not think appellant was injured by them, or that the verdict and judgment should be disturbed on account thereof.

It is urged that the court permitted an improper examination of Dr. Schroeder, who was one of appellee's attending physicians, and who testified to having treated him while he was in the hospital. The witness was asked whether or not in his opinion from his examination of appellee's wound, which he had made the day before he testified, it was possible or probable that pieces of bone were constantly discharged. The answer of the witness was: "There is a definite reason for the *sinus* remaining; that reason is usually dead bone; there may be other reasons."

The evidence tended to show that at the time of the trial there was an opening in plaintiff's leg which had never healed and that there was some discharge of matter from it. We think it was proper to inquire into the cause of this, how long it would continue, and its effect upon his health and strength. The foregoing inquiry, and some of the examination of this witness following it, was directed to that object, and we find no reversible error in the rulings of the court during the examination.

At the instance of appellee the court instructed the jury as follows:

"The court instructs the jury that if they find from the evidence that the plaintiff has made out his case by a preponderance of the evidence as laid in his declaration or some count thereof, then the jury should find for the plaintiff.

"And if you further believe from the evidence that the plaintiff has sustained injuries on account of the negligence of the defendant, as set forth and claimed in his declaration, or some count thereof, then the measure of his recovery is such damages as will compensate him for such injuries. The elements which may enter into such damages are the following:

"(1st)   Such sum as will compensate him for the expense, if any, which he has paid for medicines in his efforts to be cured during the period that he was disabled by the injuries, if the evidence shows that he was so disabled. .

"(2nd)   The value of his time as shown by the evidence during the period he was so disabled.

"(3rd)   If such injuries have impaired his powers to earn money in the future, then such a sum as will compensate him for such loss of power.

"(4th)   Such a reasonable sum as you may award him, on account of the pain, if any, plaintiff shows that he has suffered by reason of such injuries.

"The first and second of these elements are the subject of direct proof, and are to be determined by you on the evidence. The third and fourth of these elements are, from necessity, left to your sound discretion, but your conclusions should be based upon all the facts and circumstances in evidence before you."

This instruction is criticised by counsel for appellant upon the ground that no evidence was offered by appellee tending to support the count that averred negligence in operating the car without headlights, or the count which averred negligence of the appellant in employing incompetent and negligent servants to operate and manage its car; and it is further criticised in that it tells the jury in the second paragraph of the instruction that if they believe the plaintiff has sustained injuries, "then the measure of his recovery is such damages as will compensate him for such injuries." The impropriety of the instruction in this regard is claimed to be that it authorizes compensation for all injuries, including mental suffering and chagrin, not the direct result of physical pain.

It appears from what we have said above when speaking of the pleadings and issues submitted to the jury, that the court, on the motion of appellant, withdrew from the jury by its instructions the second and seventh additional counts, being the counts which averred the operation of the car without headlights and the employment of incompetent servants by ap-

pellant. The case stood, therefore, when submitted to the jury, so far as the declaration was concerned, as if the declaration had never contained the second and seventh additional counts. In this state of the record, and on the authority of North Chicago St. Ry. Co. v. Polkey, 203 Ill. 225, we think the jury could not have been misled by the instruction complained of when considered with the other instructions which dismissed those counts of the declaration from their consideration and from the case. With the counts eliminated, the instruction was proper. North Chicago St. Ry. Co. v. Hutchinson, 191 Ill. 104.

The remainder of the instruction as to the measure of recovery was approved in Ill. C. R. R. Co. v. Cole, 165 Ill. 334, affirming 62 Ill. App. 480.

Complaint is also made, but without extended argument, of the refusal of the court to give the following instruction requested by appellant:

"The jury are instructed that if, under the instructions of the court, they find from the evidence in this case the plaintiff is not entitled to recover, then they will not have occasion to at all consider the question of damages or character or extent of the injury to the plaintiff, whether serious or slight."

We do not doubt the propriety of this instruction in this case. In view, however, of the evidence and of the other instructions given at the request of appellant, and particularly the nineteenth, twenty-fourth and twenty-eighth instructions as to the burden of proof, and what the plaintiff was required to prove in order to entitle him to recover, we are of opinion that the refusal of this instruction did not have the slightest effect upon the result of the deliberations of the jury in this case. It contains a simple proposition as to the order of the deliberations of the jury, the propriety of which would occur to any ordinary mind. We cannot consider the refusal of the instruction as ground for reversal in this case.

It is urged that the verdict of the jury is grossly ex-

cessive and that the amount of the judgment is dispro-
portionate to the injuries sustained.

The evidence shows. that for many years prior to the
accident, Hagenback was a teamster in vigorous health
and possessing great strength and endurance. He was
forty-one years old at the time of the accident. His
injuries consisted of scalp wounds, bruises and a com-
pound fracture of the left femur. He was operated on
by Dr. Schroeder, assisted by Dr. Hepburn, for this
fracture on May 2, 1902. An incision was made in the
leg, the wound and broken bones were cleansed and the
ends of the bones were wired together. It being ap-
parent on May 25 that union of the bones had not
taken place, the leg was again opened, the ends of the
bone were found to be dead and were cut off and the
bones were rewired. Plaintiff remained in the hospi-
tal from May 1, 1902, to October 15, 1902. During the
greater portion of this time he was confined to his bed
and suffered most excruciating pain, necessitating the
administration of morphine from time to time. He was
attended by Doctors Schroeder, Hepburn and Ander-
son and two internes at the hospital, and was cared for
by a trained nurse. During this time a *sinus* leading
to the bone existed, from which pus was daily dis-
charged. This *sinus* continued to exist at the time of
the trial, and the evidence tends to show that it will
continue indefinitely unless a further operation shall
be submitted to, consisting of cutting open the leg and
scraping the bone. This may or may not prove suc-
cessful. In January, 1903, the adhesions which had
formed in the knee joint from non-use of the limb had
to be broken up. The result of all this has been that
Hagenback is in poor health and is easily exhausted.
His left limb is three inches shorter and the knee
joint more or less stiffened, and he has a running sore
on his leg. He was out of work for two years after
the injury. About a year before the trial he went to
work for Armour. & Company as a gateman for $7.50

per week. Although his duties are light, he is unable to work all the time on account of his limb.

Without taking further time to refer to the elements of damages shown by the record, our conclusion is, after a careful review of the evidence, that the judgment is not excessive in amount. The injuries received by appellee have left him a cripple for life with greatly diminished earning capacity. He has suffered much, and doubtless will continue to suffer more or less pain all his life from the injured limb. We cannot disturb the judgment on the ground that it is for an excessive amount.

Finding no reversible error in the record, the judgment is affirmed. '

*Affirmed.*